## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TRAVEL INDUSTRY NETWORK, INC. :
d/b/a TRAVEL WORLD NEWS, :
   Plaintiff, :
    :
v. : 3:08-cv-91 (WWE)
    :
DEPARTMENT OF TOURISM OF THE :
MINISTRY OF TOURISM AND CULTURE :
OF THE GOVERNMENT OF INDIA, :
   Defendant. :

## MEMORANDUM OF DECISION ON PLAINTIFF'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

  Plaintiff Travel Industry Network, Inc. d/b/a Travel World News ("TWN") brings this action alleging that defendant Department of Tourism of the Ministry of Tourism and Culture of the Government of India ("India Tourism") breached a contract between the parties. Now pending before the Court is plaintiff's motion for partial summary judgment (Doc. #26). For the following reasons, plaintiff's motion will be granted in part.

  The Court has jurisdiction over plaintiff's claim pursuant to 28 U.S.C. § 1330.

## BACKGROUND

  The parties have submitted briefs, a statement of facts and supporting exhibits, which reflect the following factual background.

  Travel World News is a magazine addressed to travel professionals. In July 2006, Charlie Gatt, Jr., publisher of Travel World News magazine, a publication of TWN, met with Venkatesan Dhattareyan of defendant India Tourism. Dhattareyan had the authority to enter India Tourism into advertising contracts because he was Assistant Director and then acting Regional Director.

1

On July 18, 2006, Gatt sent an email to Dhattareyan stating:

> I also wish to thank you for your concurrence to continue with our promotional partnership for another 12 months with (8) insertions of a full page 4 color ad in each of the following supplements at the same old rate of $4700. per insertion.
>
> Asia Pacific supplement          Oct 2006, Jan/Apr/July 2007
>
> Profitable World supplement   Sept/Dec 2006, Mar/Jun 2007

TWN inserted advertisements for India Tourism into its publications for September and December 2006 as well as its January 2007 publication.[1]  Defendant paid the invoices for these advertisements.  Defendant asserts that the January 2007 insertion was a gift. It, nonetheless, paid for it.

On September 5, TWN placed an advertisement for India Tourism in its October 2006 publication.  On September 27, TWN sent an invoice to India Tourism reflecting the balance for the October payment.  India Tourism did not pay this invoice because, it claims, there was no written contract between the parties.

On February 7, 2007, TWN placed an advertisement for India Tourism into its March 2007 publication.  On February 12, S.L. Khyriem of India Tourism sent an email to Gatt instructing Gatt to suspend any advertisements until the Ministry had given its approval.  Gatt responded that same day by email to Kyrhiem telling him that it was too late to cancel the March advertisement.  The deadline to cancel an advertisement for March 2007 was February 5.  On February 26, TWN sent an invoice to India Tourism

---

[1] Defendant responded to one of plaintiff's Requests for Admissions admitting this fact.  Defendant, however, denies this fact in its 56(a)(2) statement and cites to a question in a deposition of Kalyan Sengupta, defendant's Rule 30(b)(6) representative. The Court will not rely on a question as supporting a factual assertion and will deem this statement admitted.

reflecting the balance.  India Tourism did not pay it.

On March 17, 2007, Sengupta sent an email to Gatt instructing Gatt to obtain Khyriem's approval before inserting any more advertisements into the magazine. Sengupta further stated that India Tourism would not be responsible if any more advertisements were inserted into the publication.  On April 2, Sengupta sent an email to Gatt stating that no advertisements were to be inserted for India Tourism until there was written approval or a written insertion order.  Sengupta further stated that:

> And we will not be held responsible for such advt. and we will not be able to pay any amount for such advt.  However, again you have printed the advertisement in your April, 2007 issue without any written permission.
>
> I am directed to inform you that no payment will be made for such insertions.

On April 6, Sengupta sent an email to Gatt informing him that India Tourism had not received any contract signed by Dhattareyen and that without any signed contract, India Tourism was not "bound to accept any invoice raised for various insertions you are printing for us."

All of TWN's invoices for the advertisements were sent to its New York City office.  In its answer to plaintiff's complaint, defendant's sixth special defense stated:

> Defendants [sic] verbally agreed with the Plaintiff for the insertions of a specific number of advertisements.  The Plaintiff's [sic] inserted more advertisements than agreed to by the Defendants and against the written instructions by the Defendants.

By its complaint, plaintiff seeks damages for October 2006 and April, June and July 2007.  Only the invoices for October 2006 and March 2007 are addressed in plaintiff's motion.

**DISCUSSION**

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.  The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him.  See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.

4

See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

Plaintiff first argues that either Connecticut or New York law should govern this action. Defendant did not address this issue. In fact, in its response, defendant did not cite any case law from federal courts in the Second Circuit or state courts of Connecticut or New York. Therefore, the Court will apply Connecticut law. Regardless of which law applies, Connecticut and New York contract law are significantly similar, and the result would likely be the same.

A party asserting a breach of contract claim must establish (1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party and (4) damages. Bouchard v. Sundberg, 80 Conn. App. 180, 189 (2003).

A contract must be viewed in its entirety, and every provision must be given effect if it is possible to do so. United Illuminating Co. v. Wisvest-Connecticut, LLC, 259 Conn. 665, 670-71 (2002). In interpreting contract terms, the Court must afford the language used "its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." Wolosoff v. Wolosoff, 91 Conn. App. 374, 381 (2005). Where the language of the contract is clear and unambiguous, the contract should be given effect according to its terms. Breiter v. Breiter, 80 Conn. App. 332, 336 (2003). A contract is unambiguous when its language is clear and conveys a definite and precise intent. Canterbury Heights Condominium, Inc. v. Local Land Dev. LLC, 272 Conn. 724, 735 (2005). "A contract term not expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument...." Heyman v. CVS, Inc., 178 Conn. 215, 227 (1979). "A

court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." Barnard v. Barnard, 214 Conn. 99, 110 (1990).

A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. Levine v. Massey, 232 Conn. 272, 278-79 (1995). The ambiguity "must emanate from the language used" by the parties. United Illuminating Co., 259 Conn. at 671. If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous. Lopinto v. Haines, 185 Conn. 527, 538 (1981). The question of whether a contractual provision is ambiguous presents a question of law. LMK Enterprises, Inc. v. Sun Oil Co., 86 Conn. App. 302, 306 (2004). Where a contract term is found to be ambiguous, the court may properly discern the intent of the contract through consideration of extrinsic evidence. See United Illuminating Co., 259 Conn. at 675. Summary judgment is not appropriate where a contract is ambiguous and susceptible to multiple meanings. Seiden Assoc., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992) (discussing New York law).

Defendant does not dispute that there was a contract formed by the July 18, 2006 email between Gatt and Dhattareyan. It argues that there was no written contract, but admits that there was a verbal contract. A verbal contract can bind the parties. See New Horizon Fin. Servs., LLC v. First Fin. Equities, Inc., 2003 U.S. Dist. LEXIS 14573, *16 (D. Conn. Mar. 26, 2003). Further, the email message from Gatt to Dhattareyan can constitute a binding contract because an agreement sent via email can be a binding contract. See, e.g., Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC,

6

2005 U.S. Dist. LEXIS 11130 (S.D.N.Y. June 9, 2005) (ruling under New York law).

As to the October 2006 advertisement, it is clear that defendant believed that a contract existed, whether formed orally or through email.  Defendant paid for the September and December invoices; it did not pay for the insertion for October even though its obligation was established by the same email.  This fact belies defendant's argument that there was no contract between the parties.  There were no events apparent in the record that would lead the Court to find an ambiguity in the parties' agreement or a change in the parties' relationship that would warrant finding that the contract that existed in September and December did not exist in October.  See Honulik v. Town of Greenwich, 293 Conn. 698, 733 (2009) ("[P]roof of custom and past practice may be introduced to indicate the proper interpretation of contract language.").

In addition, defendant's argument that it instructed plaintiff to discontinue inserting its advertisements into the publication is irrelevant to October 2006. Defendant first told plaintiff to discontinue its insertion in February 2007, long after the October issue had been published and its obligation to pay arose.  This argument is thus irrelevant as to October.  A reasonable jury could not conclude that there was not a contract between the parties.

Because there was a contract addressing October 2006, the Court must look at whether plaintiff performed its obligation under the contract and whether defendant breached its obligation.  The undisputed evidence shows that plaintiff inserted the advertisement and that defendant did not pay as required under the contract.  Summary judgment is appropriate as to plaintiff's claim for October 2006.  The parties' agreement provided for a payment rate of $4,700 per insertion, and the Court finds that such

damages are appropriate as a matter of law and will award plaintiff $4,700 plus interest in damages for its October 2006 claim.

As to the March 2007 insertion, the undisputed evidence shows that (1) the July 18 email covered plaintiff inserting an advertisement on behalf of defendant; (2) plaintiff fulfilled its obligation; and (3) defendant did not pay as required under the contract. The Court cannot grant summary judgment on this count, however, because it is not clear that this deadline for cancellation was part of the parties' agreement. The first mention in the record of a deadline to cancel an insertion is in Gatt's February 12, 2007 email to Kyrhiem. This deadline, of the fifth of each preceding month, is not in the party's July 18 email. The Court, therefore, cannot find as a matter of law that the deadline was agreed to by the parties and was included in their agreement. The Court will deny plaintiff's motion as to the March 2007 insertion.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Partial Summary Judgment (Doc. #26) is GRANTED as to the October 2006 insertion.

Dated at Bridgeport, Connecticut, this 6th day of May, 2010.

_____/s/_____
Warren W. Eginton
Senior United States District Judge

8